IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MOISES ZAMORA,<br><br>Defendant. | CR 23-20-BLG-SPW<br><br>ORDER |

Before the Court is Defendant Moises Zamora's Motion to Suppress. (Doc. 20). Zamora seeks to suppress all evidence obtained from his detention and arrest on the grounds that law enforcement did not have reasonable suspicion to seize him by blocking in his vehicle in the gas station parking lot. (*Id.*). The United States filed a response brief in opposition to the motion. (Doc. 23). Zamora did not file a reply.

Neither party requested a hearing. The Court has reviewed Zamora's exhibits, namely Yellowstone County Sheriff's Deputy Harrison Gillen's case report and dash camera footage. (Docs. 21-1, 22). The parties do not dispute the correctness of these exhibits, and there are no disputes of fact for the Court to resolve. Zamora's motion is purely based on legal grounds. As such, the Court concludes that the matter can be resolved without a hearing. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to

1

suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); *see also United States v. Cook*, 808 F.3d 1195, 1201 (9th Cir. 2015).

For the following reasons, the Court denies Zamora's motion.

## I.   Factual Background

On November 11, 2022, Deputy Gillen noticed a vehicle parked at the Lockwood Town Pump, 2711 North Frontage Road, in Yellowstone County. (Doc. 21-1 at 4). He reported that it was "parked in an obscure manner" because it was away from any gas pumps and the store entrance. (*Id.*). He wrote that it "appeared out of place" because "it would have been an arduous walk" to the gas station "through an icy parking lot." (*Id.*). Additionally, Deputy Gillen noted that the driver appeared to point toward his patrol car and then slouch down in his seat. (*Id.*). The vehicle is not visible in the dash camera footage at this point. Deputy Gillen described this parking lot as commonly used by people engaging in criminal activity, specifically related to drugs, guns, and stolen property. (*Id.*).

Deputy Gillen drove into the parking lot and stopped less than a cars length away from the vehicle. (Doc. 22 at 0:08-0:45). The dash camera footage shows two people in the vehicle sitting upright in the driver and passenger seats. The driver, later identified as Zamora, turns on the vehicle, backs up slightly, and flips

2

the vehicle around. (*Id.* at 1:05-23). Deputy Gillen activated his emergency lights to try to stop Zamora, but Zamora turned onto the adjacent frontage road and sped away. (*Id.* at 1:20-2:01). Deputy Gillen activated his siren and told dispatch he was pursuing the vehicle. (*Id.* at 1:54; Doc. 21-1 at 4). Zamora drove at speeds up to 80 mph and passed a semi in a no-passing zone. (*Id.* at 2:25-31; Doc. 21-1 at 4). The speed limit on this section of the frontage road is 55 mph, and the roads were wet, slushy, and at times covered in ice and snow. (Doc. 21-1 at 4; Doc. 22 at 2:00-9:38). Deputy Gillen wrote that Zamora "continued to foster an environment that could have seriously injured his passenger, the innocent motoring public and the Deputies pursuing him." (Doc. 21-1 at 5).

Eventually, Zamora reached a dead end, stopped, and exited his vehicle with his hands up. (Doc. 22 at 9:42-50). Deputy Gillen commanded Zamora onto the ground, handcuffed him, and frisked him. (*Id.* at 10:05-11:00). A records check of Zamora showed he had a nationwide extraditable no-bond federal warrant and non-extraditable warrants out of Colorado. (Doc. 21-1 at 5).[1]

Deputy Gillen looked into the car through the windows and open doors. (Doc. 22 at 12:12). He saw two blue "M30" pills, which Deputy Gillen knows usually contain illicit fentanyl based on his training and experience. (Doc. 21-1 at 6).

---

[1] Deputy Gillen's report did not state what the warrants were for.

3

Deputy Gillen applied for and was granted a warrant to search Zamora's vehicle. Deputy Gillen seized seven large individually wrapped and sealed bags of a white, crystalline substance "consistent with methamphetamine." (Doc. 21-1 at 7). He estimated the bags totaled five pounds. (*Id.*). Zamora was charged in this Court with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1).

## II.   Legal Standard

The Fourth Amendment prohibits unreasonable searches and seizures. A traffic stop is a "seizure" within the meaning of the Fourth Amendment. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). Similar to a *Terry* stop, law enforcement only needs reasonable suspicion that a crime has occurred to conduct an investigatory stop. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000). When an officer stops a vehicle and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (citing to *Terry v. Ohio*, 392 U.S. 1 (1968)).

"Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (quoting *United States v. Cortez*, 499 U.S. 411, 417-18 (1981)). "The quantum of proof needed for reasonable suspicion

4

is less than a preponderance of evidence and less than probable cause." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). The standard is "not a particularly high threshold to reach" but "a mere hunch is insufficient." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013).

To make a warrantless arrest, law enforcement needs probable cause that the person has committed a crime. *United States v. Watson*, 423 U.S. 411 (1976). "Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances." *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Accordingly, to satisfy the probable cause requirement, there must be a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013).

If law enforcement violated Zamora's Fourth Amendment right to be free from "unreasonable searches and seizures, then all evidence seized as a result of the unconstitutional actions of law enforcement must be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978) (citing *Simmons v.*

5

*United States*, 390 U.S. 377, 389-90 (1968)). In the case of a warrantless search or seizure, however, the Government bears the burden of proving by a preponderance of the evidence that one of the exceptions to the warrant requirement applies. *See United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992).

### III. Analysis

Zamora argues that he "was seized the moment Deputy Gillen pulled directly behind Zamora's vehicle [in the Lockwood Town Pump parking lot], attempted to block him in, and turned on his overhead lights." (Doc. 21 at 6). According to Zamora, Deputy Gillen's actions amounted to a seizure of his person under *United States v. Kerr*, which held that a defendant was seized when, while trying to exit his driveway in his car, a sheriff pulled into and blocked the driveway. (*Id.* (citing 817 F.2d 1384, 1386 (9th Cir. 1987)). Deputy Gillen did not have reasonable suspicion to seize him because, according to Zamora, he "was not evidencing any behaviors" that would indicate criminal conduct. (*Id.*).

The Government argues that, regardless of whether Deputy Gillen had reasonable suspicion of criminal activity when he pulled behind Zamora, Zamora's arrest and the subsequent search were constitutional because the high-speed chase provided Deputy Gillen with independent probable cause of criminal endangerment in violation of Montana Code Annotated § 45-5-207. (Doc. 23 at 6).

6

As an initial matter, the Court finds that Zamora was not seized. When law enforcement block in a parked vehicle, there is not a seizure of the person inside the vehicle, only a potential seizure of the vehicle itself, so long as the person has another "avenue for departure," namely walking away. *United States v. Kim*, 25 F.3d 1426, 1431, n.2 (9th Cir. 1994). *Kerr*'s definition of seizure as including when a cop blocks in the defendant's car applies only when the vehicle is moving, so *Kerr* is inapplicable here. *See United States v. Nunn*, No. 14-cr-636-TEH, 2015 WL 3764181, at *3-4 (N.D. Cal. June 16, 2015) (distinguishing *Kim* and *Kerr*).

Applying *Kim*, the Court finds that Deputy Gillen did not block in Zamora's vehicle in such a way that Zamora could not exit his vehicle and walk away, and therefore Zamora did not meet his burden to show a seizure of his person occurred. Since Zamora did not argue that his vehicle was seized, the Court will not consider whether such a seizure occurred.

Even assuming an unconstitutional seizure occurred, the Court finds the attenuation doctrine applies and independently justifies denial of Zamora's motion. The attenuation doctrine, as an exception to the fruit of the poisonous tree doctrine, provides that evidence is admissible when "'the connection between the illegality and the challenged evidence' has become so attenuated 'as to dissipate the taint caused by the illegality.'" *United States v. Gorman*, 859 F.3d 706, 718 (9th Cir. 2017) (quoting *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir.

1989)). In evaluating whether the connection between the constitutional violation and subsequently discovered evidence is sufficiently attenuated to "purge" the "taint," the Court considers "the temporal proximity" of the officer's illegal conduct and the evidence in question, "the presence of intervening circumstances," and "the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).

The first factor weighs against attenuation here because the time between the alleged seizure and Zamora fleeing was less than a minute. Typically, a period of less than several hours is insufficient to purge the taint of an illegal search. *See, e.g. Taylor v. Alabama*, 457 U.S. 687, 691 (1982) (finding that a confession made six hours after an illegal arrest was not sufficiently attenuated where the suspect remained in custody and was questioned, fingerprinted, and subjected to a lineup without counsel).

The second factor weighs heavily in favor of attenuation because Zamora's flight was a clear intervening event that constituted a new, distinct crime and posed serious risk to public safety. *See, e.g., United States v. Allen*, 619 F.3d 518, 526 (6th Cir. 2010) (denying suppression where the defendant tried to escape by leading officers on a high-speed chase, which "constituted a new, distinct crime"); *United States v. Boone*, 62 F.3d 323, 324 (10th Cir. 1995) (denying suppression where vehicular flight posed serious risks to public safety); *United States v. Bailey*,

691 F.2d 1009, 1016-17 (11th Cir. 1982) (finding that attenuation exists "if defendant's response is itself a new, distinct crime."). Zamora passed vehicles in no-passing zones and drove, at times, 25 mph over the speed limit on wet, slushy, icy, and snowy roads. His actions, viewed objectively, placed innocent motorists in danger given his speeds and the driving conditions. He "knowingly engage[d] in conduct that create[d] a substantial risk of death or serious bodily injury," in violation of Montana Code Annotated § 45-5-207.

As to the third factor, even assuming Deputy Gillen unconstitutionally seized Zamora or his vehicle in the parking lot, Deputy Gillen's conduct was not so flagrant to preclude the application of the attenuation doctrine. He did not have his gun drawn, his lights or siren activated, or engage in any other threatening gestures besides the position of his vehicle. Further, he did not handcuff or detain Zamora. This conduct pales in comparison to law enforcement's actions in *Brown*. In *Brown*, police conducted a warrantless search of the defendant's apartment without probable cause, surprised the defendant on the stairway of his apartment with their guns drawn, and handcuffed the defendant on the way to the police station. 422 U.S. at 592. The Court found their actions were "calculated to cause surprise, fright, and confusion." *Id.* at 605. Deputy Gillen's actions, in contrast, were "relatively unintimidating" and certainly more excusable than those in *Brown*.

9

*United States v. Perez-Esparza*, 609 F.2d 1284, 1290 n.3 (9th Cir. 1979) (comparing the defendant's experience to that in *Brown*).

Based on the occurrence of intervening events and the lack of flagrant conduct by Deputy Gillen, the Court finds the *Brown* factors weigh in favor of attenuation, and thus the Government met its burden to show the attenuation doctrine exception applies. Zamora's Fourth Amendment rights were not violated.

## IV. Conclusion

IT IS HEREBY ORDERED that Defendant Moises Zamora's Motion to Suppress (Doc. 20) is DENIED.

DATED this 8th day of August, 2023.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge