IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MOISES ZAMORA,<br><br>Defendant. | CR 23-20-BLG-SPW<br><br>ORDER |

Before the Court is Defendant Moises Zamora's second motion to suppress. (Doc. 41). In his first motion to suppress, Zamora argued that Yellowstone County Sheriff's Deputy Harrison Gillen seized his person without reasonable suspicion when Gillen pulled up behind Zamora's parked car in a gas station parking lot, and therefore all evidence obtained from Zamora's detention and arrest must be suppressed. (Docs. 20, 21). The Court denied the motion on the grounds that Gillen did not seize Zamora, and, regardless, that the attenuation doctrine purged the taint from any unconstitutional seizure. (Doc. 25).

In the Court's order, the Court distinguished between caselaw concerning the seizure of a person versus their vehicle when an officer pulls up behind a defendant's car. (*Id.* at 7). The Court wrote, "'When law enforcement block in a parked vehicle, there is not a seizure of the person inside the vehicle, only a potential seizure of the vehicle itself, so long as the person has another 'avenue for departure,' namely

1

walking away." (*Id.* (quoting *United States v. Kim*, 25 F.3d 1426, 1431, n.2 (9th Cir. 1994))).

In the instant motion, Zamora argues that police unconstitutionally seized his vehicle when Gillen pulled up behind him, and therefore suppression is warranted. (Doc. 42 at 2). The Government maintains the motion is moot because the Court held that, regardless of whether an unconstitutional seizure occurred when Gillen pulled up behind Zamora, the attenuation doctrine applied and justified any seizure. (Doc. 47 at 2).

Zamora requested a hearing. (Doc. 42 at 2). At the hearing on April 25, 2024, counsel agreed to submit the motion on briefs. (Doc. 49). The Court finds the material facts are not disputed based on the parties briefing and Gillen's dash camera footage and report.

The Court denies Zamora's motion because Zamora's vehicle was not unconstitutionally seized. Further, as in the Court's order on Zamora's first motion to suppress, the high-speed chase Zamora led police on was an intervening circumstance that purged the taint between any constitutional violation and the subsequently discovered evidence.

I. **Factual Background**

The record has not been further developed since Zamora's first motion to suppress, and the facts are the same. The Court therefore adopts its recitation of the

2

facts from its order on the first motion to suppress and reiterates them here for convenience.

On November 11, 2022, Deputy Gillen noticed a vehicle parked at the Lockwood Town Pump, 2711 North Frontage Road, in Yellowstone County. (Doc. 21-1 at 4). He reported that it was "parked in an obscure manner" because it was away from any gas pumps and the store entrance. (*Id.*). He wrote that it "appeared out of place" because "it would have been an arduous walk" to the gas station "through an icy parking lot." (*Id.*). Additionally, Gillen noted that the driver appeared to point toward his patrol car and then slouch down in the seat. (*Id.*). The vehicle is not visible in the dash camera footage at this point. Gillen described this parking lot as commonly used by people engaging in criminal activity, specifically related to drugs, guns, and stolen property. (*Id.*).

Gillen drove into the parking lot and stopped less than a cars-length away from the vehicle. (Doc. 22 at 0:08–0:45). The dash camera footage shows two people in the vehicle sitting upright in the driver and passenger seats. The driver, later identified as Zamora, turned on the vehicle, backed up slightly, and flipped around. (*Id.* at 1:05–23). Gillen activated his emergency lights to try to stop Zamora, but Zamora turned onto the adjacent frontage road and drove away. (*Id.* at 1:20–2:01). Gillen activated his siren and told dispatch he was pursuing the vehicle. (*Id.* at 1:54; Doc. 21-1 at 4). Zamora drove at speeds up to 80 mph and passed a semi in

a no-passing zone. (*Id.* at 2:25–31; Doc. 21-1 at 4). The speed limit on this section of the frontage road is 55 mph, and the roads were wet, slushy, and at times covered in ice and snow. (Doc. 21-1 at 4; Doc. 22 at 2:00–9:38). Gillen wrote that Zamora "continued to foster an environment that could have seriously injured his passenger, the innocent motoring public and the Deputies pursuing him." (Doc. 21-1 at 5).

Eventually, Zamora reached a dead end, stopped, and exited his vehicle with his hands up. (Doc. 22 at 9:42–50). Gillen commanded Zamora onto the ground, handcuffed him, and frisked him. (*Id.* at 10:05–11:00). A records check of Zamora showed he had a nationwide extraditable no-bond federal warrant and non-extraditable warrants out of Colorado. (Doc. 21-1 at 5).[1]

Gillen looked into the car through the windows and open doors. (Doc. 22 at 12:12). He saw two blue "M30" pills, which Gillen knows based on his training and experience usually contain illicit fentanyl. (Doc. 21-1 at 6).

Gillen applied for and was granted a warrant to search Zamora's vehicle. Gillen seized seven large, individually wrapped and sealed bags of a white, crystalline substance "consistent with methamphetamine." (Doc. 21-1 at 7). He estimated the bags totaled five pounds. (*Id.*). Zamora was charged in this Court with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. 1).

---

[1] Gillen's report did not state what the warrants were for.

4

## II.  Legal Standard

The Fourth Amendment prohibits unreasonable searches and seizures. When an officer stops a vehicle and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Law enforcement only needs reasonable suspicion that a crime has occurred to conduct an investigatory stop. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000).

To make a warrantless arrest, law enforcement needs probable cause that the person has committed a crime. *United States v. Watson*, 423 U.S. 411, 417 (1976). "Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances." *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

If law enforcement violated Zamora's Fourth Amendment right to be free from unreasonable searches and seizures, "then all evidence seized as a result of the unconstitutional actions of law enforcement must be suppressed as the fruit of the

poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (citing *Simmons v. United States*, 390 U.S. 377, 389–90 (1968)). In the case of a warrantless search or seizure, however, the Government bears the burden of proving by a preponderance of the evidence that one of the exceptions to the warrant requirement applies. *United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992).

### III. Analysis

Zamora argues Gillen seized his vehicle without reasonable suspicion of a crime when Gillen pulled up behind him and when Gillen activated his overhead lights. The Government responds that no seizure occurred, and even if it had, the attenuation doctrine justifies Zamora's arrest and the seizure of the evidence from Zamora's vehicle.

The Court first will address whether Zamora's vehicle was seized and then will address whether the attenuation doctrine applies.

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that

the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991). This usually involves a "termination of an individual's freedom of movement through means intentionally applied" by police. *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989).

Zamora argues that his vehicle "was seized the moment that Deputy Gillen pulled behind Moises' vehicle and attempted to block him in." (Doc. 42 at 5). He also asserts that his vehicle was seized when Gillen turned on his overhead lights. (*Id.*). Zamora cites *United States v. Kerr*, in which the Ninth Circuit found a defendant was seized when a sheriff pulled into and blocked the defendant from leaving his driveway, and *United States v. Delaney*, in which the D.C. Circuit found that parking in front of a vehicle such that it would have required multiple turns to get out of the spot while aiming a floodlight at the car was a seizure. (*Id.* (citing 817 F.2d 1384, 1386 (9th Cir. 1987); 955 F.3d 1077 (D.C. Cir. 2020))). As such, Zamora asserts his vehicle was seized and Gillen needed reasonable suspicion to do so constitutionally. (*Id.* at 7).

The Government asserts that neither *Kerr* nor *Delaney* are analogous to the facts here. (Doc. 47 at 3–4). As to *Kerr*, the Government notes that the Court previously held that *Kerr* applies to moving, not parked, vehicles. (*Id.*). As to *Delaney*, the Government asserts that the officers' conduct while in the parking lot, namely parking their cruiser feet away from the nose of the defendant's parked

7

vehicle in a narrow parking lot at night while pointing a spotlight on the defendant, was a show of authority sufficient to constitute a seizure. (*Id.* at 4). Those facts do not exist here, as Gillen parked behind Zamora during the day in a large parking lot and did not use a spotlight. (*Id.*). Broadly, the Government maintains that "Gillen's actions were also not sufficient to effectuate a stop, as evidenced by Zamora's flight." (*Id.* at 4–5). Thus, according to the Government, Gillen did not seize Zamora's vehicle and the Fourth Amendment was not implicated. (*Id.* at 5–6).

The Court agrees with the Government. As to Zamora's argument that his vehicle was seized when Gillen pulled up behind Zamora, Gillen's only show of authority was parking behind Zamora's vehicle. Gillen did not activate his lights or siren or use a spotlight. *See United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007) (holding that a seizure did not occur, in part, because the officer did not activate his lights or siren); *cf. Delaney*, 955 F.3d at 1082–83 (holding that a seizure occurred, in part, because of the use of the spotlight); *United States v. Alvarado*, 763 F. App'x 609, 610–11 (9th Cir. 2019) (same). Gillen also did not completely block Zamora's vehicle from moving, as demonstrated by the fact that Zamora was able to back up and turn around relatively easily and with only one maneuver, even if slowly. *See Washington*, 490 F.3d at 770 (holding in part that a seizure did not occur because the officer parked his squad car a full car length behind the defendant's car "so he did not block it."); *cf. United States v. Nunn*, No. 14-cr-00636, 2015 WL

3764181, at *4 (N.D. Cal. June 16, 2015) ("When the officers parked behind Defendant's vehicle, it became blocked between the curb in front of the vehicle and the patrol car behind it. The vehicle's freedom of movement had been intentionally terminated, constituting a seizure of the vehicle.").

As to Zamora's argument that his vehicle was seized when Gillen turned on his overhead lights, the Court finds this argument more persuasive but nonetheless unavailing. Gillen activating his headlights was a display of authority. However, Gillen did not assert any other authority to terminate Zamora's vehicle's movement. As Zamora drove toward the exit of the parking lot, Gillen's vehicle was perpendicular to Zamora's driver side door. On the other side of Zamora was a parked car. Zamora could continue to drive his vehicle forward without any additional maneuvers, and therefore his freedom of movement was not restricted, let alone terminated. Simply turning on his headlights is insufficient to rise to the level of terminating Zamora's freedom of movement.

Even if an unconstitutional seizure of Zamora's vehicle had occurred, the attenuation doctrine still independently justifies law enforcement's actions and the denial of Zamora's motion for the reasons stated in the Court's order on Zamora's first motion to suppress. The Court adopts its reasoning from that order as the basis for denying Zamora's motion.

9

## IV. Conclusion

IT IS HEREBY ORDERED that Defendant Moises Zamora's Motion to Suppress (Doc. 41) is DENIED.

DATED this 6th day of May, 2024.

SUSAN P. WATTERS
United States District Judge